**REDACTED VERSION**

# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Criminal No. 4:CR-05-0402 |
| Plaintiff, | : | |
| | : | (Jones, J.) |
| -against- | : | |
| | : | (Electronically Filed) |
| JOHN J. RIGAS and TIMOTHY J. | : | |
| RIGAS, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF  JOHN RIGAS AND TIMOTHY RIGAS' MOTION TO COMPEL THE PRODUCTION OF <u>GOVERNMENT INTERVIEW NOTES DESCRIBED IN THE BRIEF</u>

DILWORTH PAXSON LLP
Joseph U. Metz, Esq.
Pa. Attorney ID # 32958
112 Market Street, 8th Floor
Harrisburg, PA 17101

DILWORTH PAXSON LLP
Lawrence G. McMichael, Esq.
Pa. Attorney ID # 28550
1735 Market Street, Suite 3200
Philadelphia, PA 19103

ATTORNEYS FOR DEFENDANTS JOHN J. RIGAS AND TIMOTHY J. RIGAS

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................1

II.  BACKGROUND ........................................................................................3

    A.   The Current Charges.............................................................................3

    B.   Request for Exculpatory Information in the Criminal Case......................5

    C.   Request for Exculpatory Information in this Case ..................................11

III. ARGUMENT ...........................................................................................11

IV.  CONCLUSION .........................................................................................19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Brady v. Maryland,*
   373 U.S. 83 (1963) ........................................................................ 11, 15

*Kyles v. Whitley,*
   514 U.S. 419 (1995) ............................................................................15

*United States ex rel. Marzeno v. Gengler,*
   574 F.2d 730 (3d Cir. 1978) ..............................................................12

*United States v. Avellino,*
   136 F.3d 249 (2d Cir. 1998) ..............................................................16

*United States v. Bagley,*
   473 U.S. 667 (1985) ...................................................................... 11, 12

*United States v. Bergonzi,*
   216 F.R.D. 487 (N.D. Cal. 2003) .......................................... 13, 14, 15

*United States v. Deerfield,*
   501 F. Supp. 796 (E.D. Pa. 1980)......................................................12

*United States v. Dennis,*
   384 U.S. 855 (1966) ...........................................................................13

*United States v. Higgs,*
   713 F.2d 39 (3d Cir. 1983) ................................................................12

*United States v. Joseph,*
   996 F.2d 36 (3d Cir. 1993) ................................................................15

*United States v. Kaplan,*
   554 F.2d 577 (3d Cir. 1977) ..............................................................12

*United States v. Perdomo,*
    929 F.2d 967 (3d Cir. 1991) .......................................................... 15, 16

*United States v. Starusko,*
    729 F.2d 256 (3d Cir. 1984) ................................................................12

John J. Rigas ("John Rigas") and Timothy J. Rigas ("Tim Rigas") (collectively, "Rigases"), by and through the undersigned counsel hereby submit this Brief in support of their Motion to Compel Production of Government Interview Notes Described in the Brief.

## I.   INTRODUCTION

The Rigases move this Court for an order requiring the government to produce notes relating to its interviews of several witnesses, including Carl Rothenberger ("Rothenberger") and James Brown ("Brown") who are the two most important witnesses in this case. Rothenberger was a partner at Buchanan Ingersoll ("Buchanan"), Adelphia's outside general counsel, and a securities expert and was involved in every one of the securities transactions at issue in this case. Despite his intimate knowledge of these transactions and the implicit acknowledgment that the notes contain exculpatory evidence, the government refuses to produce the notes of its two-day interview. To this day, the government has still not identified the names of any other Buchanan representatives that it interviewed let alone produced those notes.

In addition to the Buchanan lawyers, the government has also refused to produce any notes from interviews of representatives from the banks involved in the co-borrowing facilities that were used for many of the securities purchases at issue in this case or even to identify who was interviewed. The banks were aware

that one of the purposes of the credit facilities was to make loans to the Rigases for the purchase of Adelphia securities.

With respect to the Buchanan lawyers and the bank witnesses, during civil depositions in another matter, they provided limited exculpatory information regarding matters at issue in this trial. Unfortunately, given the passage of time between when the relevant events occurred and when these individuals were deposed, many of the witnesses' recollections were poor. The government's interview notes would enable the Rigases to refresh the witnesses' recollection so that the entire true story can be told. Moreover, the interview notes likely contain exculpatory information relevant to this case about which witnesses were not questioned in the civil case. For example, Rothenberger was deeply involved in estate planning issues that are directly relevant to certain payments made to John Rigas at issue in this case but which were not the focus of the civil case. These notes are critical for adequate trial preparation.

Brown was the government's main witness at the criminal trial of the Rigases. Following the criminal trial, Brown gave testimony in two SEC proceedings that contradicted his criminal trial testimony. The government has refused to produce the notes taken by the SEC during Brown's preparation for his testimony in that case. Given the exculpatory nature of Brown's testimony in the SEC proceedings, it stands to reason that the notes of interviews in preparation for

that testimony would contain exculpatory information that should be produced to the defense.  The production of all of this information is constitutionally mandated.

## II.   BACKGROUND

### A.   The Current Charges

The government's theory in the instant tax evasion case is that the Rigases stole money or stock from Adelphia and, as a result, should have paid federal taxes on the allegedly ill-gotten gains.   Additionally, the government alleges that the Rigases participated in a conspiracy to divert funds from Adelphia without paying income taxes.   The government provided counsel with a series of specific transactions that it contends constituted theft from Adelphia and, therefore, gave rise to a tax liability for the Rigases during the Indictment period.  The transactions identified by the government as the basis for the tax evasion claims relate in some way, for the most part, to certain purchases of Adelphia securities by the Rigases between 1998 and 2000.  Some of those purchases were made with funds jointly borrowed by Adelphia entities and Rigas entities pursuant to certain co-borrowing agreements.   In addition, the government claims that the Rigases improperly diverted funds from Adelphia's cash management system.

Through this motion, the Rigases' seek government interview notes relating to several key witnesses who are crucial to their defense.  Carl Rothenberger was Adelphia's lead, outside securities and corporate governance lawyer.   He also

played a key role with respect to Adelphia's Board meetings and corporate governance issues.                                    REDACTED

In light of this role, he is one of the most important witnesses in any Adelphia matter, including this criminal tax case.

Likewise, the banks that were lenders under the co-borrowing facilities should be able to testify that the funds drawn down by the Rigases were legitimate loans and that such loans could properly be used by Rigas affiliates for purchases of Adelphia securities.

Finally, James Brown was the key government witness at the original criminal trial.   Following the criminal trial, he gave exculpatory testimony regarding the Rigases that was inconsistent with his criminal trial testimony.  For example, Brown testified that the Rigases had the ability to repay their co-borrowing debt notwithstanding his testimony in the criminal case that the Rigases were "under water."

### B.    Request for Exculpatory Information in the Criminal Case.

As part of its prosecution of the Rigases in the Southern District of New York, the government conducted a broad investigation of Adelphia.  On January 27, 2004, the government sent the Rigases an updated list of witness statements that included over 150 people, including memoranda of interviews of Rothenberger conducted by counsel to Adelphia's Special Committee.  [Letter from Margaret Lee dated January 27, 2004 ("Gov. Witness List"), attached as Exhibit B.][1]  The government provided the Rigases with notes from interviews that it conducted with over 70 people included on this list.  Many of the people included on this list had a very limited involvement with and knowledge of Adelphia and were consequently

---

[1]      Although the written memoranda of interviews conducted by counsel to Adelphia's Special Committee were produced, the handwritten notes and drafts of such interviews were never produced.                    REDACTED

                         This Court should also compel the production of these notes in order to avoid a constitutional infirmity in this case.

of minor importance to the case.  For example, the government produced its notes from interviews with Dick Garbarino, who was a self-employed caretaker.  The government nevertheless produced the notes of its interviews with these people, including many people whose names were never even mentioned at the trial.  It did not produce notes or memoranda from any government interview of Rothenberger. [Gov. Witness List.]

The government also produced transcripts of sworn testimony from the SEC investigation of several of Deloitte's auditors, SEC notes from an interview with Niraj Gupta, a Salomon Smith Barney analyst who covered Adelphia, and two SEC correspondence files concerning Adelphia's SEC filings in 1994 and 1995. No SEC materials relating to Rothenberger were produced.  [Gov. Witness List.]

Prior to the criminal trial, Rothenberger consistently refused to speak with the Rigases' defense counsel.  Through his counsel, he advised the Rigas defense team that, if he were subpoenaed to testify at trial, he would invoke his Fifth Amendment rights.  Rigas defense counsel was also advised that Rothenberger took a similar view with respect to the government: he would not talk to government investigators or lawyers and would assert a Fifth Amendment privilege if subpoenaed.  Buchanan's counsel likewise has indicated that the Buchanan lawyers will not speak with the Rigases' defense counsel about the substance of this case.

6

Notwithstanding the position that Rothenberger enunciated to the Rigas defense team, he in fact agreed to be interviewed by the U.S. Attorney's Office prior to the criminal trial.  The interview took place over two days shortly before the commencement of the criminal trial.  He was interviewed on February 20 and 21, 2004 by Christopher Clark, one of the prosecution's trial lawyers and by Thomas Feeney, a U.S. Postal inspector.   Thomas Feeney took notes of the interview.                              REDACTED

On February 24, 2004, Clark sent a one sentence letter to criminal counsel informing them that Rothenberger may be able to provide favorable information regarding one transaction involving timber:

> The government writes to inform you that Carl Rothenberger, Esq. may be able to provide information that is favorable to the defense concerning the timber rights transaction discussed in the government's Bill of Particulars.

[Letter from Clark dated February 24, 2004, attached as Exhibit D.]  The letter did not disclose that Rothenberger had been interviewed nor did it advise defense counsel what exculpatory information was in the government's possession.

Following the interview, the prosecutors decided not to call Rothenberger as a witness at trial.  After the criminal trial, Rothenberger was deposed in a civil proceeding for 13 days – far longer than any other witness.  He offered a vast amount of exculpatory evidence on the very issues that the government had questioned him about and stated consistently that he did not believe that any type of fraud had occurred.  His statements during the government interview were surely consistent with his subsequent sworn testimony and must have contained similar exculpatory evidence.

After the Rigases' trial, Rothenberger was also interviewed by the SEC in December 2004 concerning the SEC's investigation of Adelphia matters.  There was a court reporter present who transcribed the interview.    REDACTED

The government has never produced the transcript of this interview.

In September 2007, the government informed the Rigases for the first time that it had taken notes of its interview with Rothenberger.  After the government refused to produce those notes in response to an informal request by the Rigases, by letter dated October 15, 2007, the Rigases made a very specific request asking the government to disclose whether the Department of Justice or the SEC possessed materials reflecting, *inter alia*, interviews (1) with Rothenberger other than the February 20 and 21, 2004 interview identified here; (2) with any other Buchanan Ingersoll attorneys; and (3) with any lenders or investment bankers involved in Adelphia's transactions.  The Rigases also requested in this letter that the government indicate whether there existed any materials reflecting the preparation of James Brown to testify as a government witness in the Dearlove and Mulcahey proceedings.  Given Brown's testimony in those later proceedings, the Rigases believe that if any of these materials existed, they would contain exculpatory evidence.  In response to the letter, the government declined to indicate whether any of the materials existed nor did they deny that the materials exist.

After the government denied their October 15, 2007 request for information, the Rigases filed a motion to compel production in the criminal case for use at the Rigases' resentencing hearing.  Notably, the government did not claim that the interview notes that the Rigases were seeking did not contain exculpatory

information.  Rather, the government argued that the Rigases were not entitled to the notes mainly because the law only requires that the government identify those witnesses of which the defense is not aware and that the law does not require that exculpatory evidence be produced.  Although the Rigases strongly opposed the government's arguments, the Court nonetheless denied their motion.[2]  *United States v. Rigas*, No. 02 Cr. 1236 (S.D.N.Y. January 15, 2008).

In Judge Sand's opinion, citing Second Circuit law, he adopted the reasoning of the government that the Rigases were aware of the identity of Rothenberger and the other witnesses at the time of the original trial and, therefore, could have called them as witnesses.  Judge Sand did not address the Rigases' argument that, because Rothenberger would not speak with defense counsel prior to trial, they did not know what his testimony would have been on many of the key issues in the case. Indeed, since Judge Sand did not review the notes in camera, the court could not have possibly determined that the information contained in those notes was in possession of the defense at the time of the criminal trial.  In ruling on the Motion, the court also failed to address the Rigases' argument that, regardless of whether the prior decision not to produce the notes constituted a violation, such notes were important to the Rigases' resentencing proceedings.

---

[2]  The Rigases intend to appeal that decision at the appropriate time.

## C.     Request for Exculpatory Information in this Case

By letter dated February 28, 2008, counsel for the Rigases requested that the government produce:

> 1.     any and all notes of interviews by the government of any Buchanan Ingersoll  attorney including, but not limited to, Carl Rothenberger, Bruce Booken and Paula Zawadski;
>
> 2.     any and all notes of interviews conducted by the SEC of James Brown; and
>
> 3.     any and all notes of interviews of representatives from the banks involved in the co-borrowing facilities.

By letter dated March 25, 2008, the government refused the Rigases' request, citing Judge Sand's opinion in the criminal case that the government has no obligation to turn over information already in the possession of the defense.

## III.   ARGUMENT

The government should produce to the Rigases the notes from the interviews conducted by the prosecutors in the SDNY action and the SEC with Buchanan Ingersoll attorneys, including Carl Rothenberger, representatives of the banks involved with the co-borrowing facilities, and Jim Brown.[3]   Under *Brady v. Maryland*, 373 U.S. 83 (1963), the government has an affirmative duty to produce any evidence favorable to the defendant that is material to either guilt or punishment.   *United States v. Bagley*, 473 U.S. 667, 674-75 (1985).   Both

---

[3]      The government should also produce any materials reflecting interviews with representatives from Scientific Atlanta and Motorola.  These materials should directly impeach Jim Brown.

exculpatory information and evidence that can be used to impeach the prosecution's witnesses are considered "favorable" under *Brady* and must be disclosed by the government. *Id.* at 676-77. In cases where it is not clear whether a particular bit of evidence or information is materially exculpatory, the prosecutor should err on the side of providing the evidence. *See United States v. Deerfield,* 501 F. Supp. 796 (E.D. Pa. 1980) ("[B]ecause we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.").

The Third Circuit has recognized that district courts have general discretionary authority to order the pretrial disclosure of *Brady* material "to ensure the effective administration of the criminal justice system." *United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984) (quoting *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983)). *See also*, *United States ex rel. Marzeno v. Gengler*, 574 F.2d 730, 739 (3d Cir. 1978) ("a prosecutor's timely disclosure obligation with respect to [*Brady*] material cannot be overemphasized"); and *United States v. Kaplan*, 554 F.2d 577, 578 (3d Cir. 1977) ("we disapprove and discourage a practice of delayed production"). Moreover, the *Starusko* court "flatly" rejected the argument that the government, instead of the district court, should decide in the first instance when to turn over *Brady* materials. *Starusko*, 729 F.2d at 261.

In *United States v. Dennis*, 384 U.S. 855 (1966), the Court found that defendants were entitled to review grand jury testimony that the government had refused to turn over. The Court stated that "[i]n our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact," and added that "[t]here is no justification for relying upon 'assumption.'" *Id.* at 873-74. The Court also dismissed the idea that a trial judge could always properly weigh the value of information:

> Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. . . . The determination of what may be useful to the defense can properly and effectively be made only by an advocate.

*Id.* at 874-75. In *Dennis*, the government conceded that the importance of preserving the secrecy of the grand jury minutes sought by the defendant was minimal. Based on a finding that the defendants had demonstrated a "particularized need" for the materials, the Court concluded that the grand jury minutes should be produced to the defendants to review. *Id.* at 874-75.

Other courts besides the Supreme Court have ordered government production of documents to defendants who successfully argued that the documents likely contained *Brady* information. In *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003), the court ordered the government to produce

documents to the defendants.  In doing so, the court interpreted *Brady* to require disclosure of exculpatory information that is either admissible or reasonably likely to lead to admissible evidence.  *Id.* at 499.

The *Bergonzi* defendants were former executives charged with engaging in fraudulent practices that resulted in the intentional misstatement of their company's publicly reported results.  The company independently investigated their past actions.  As part of its internal review, the company drafted memoranda based on interviews that it conducted.  The company used the memoranda to produce a report, which, along with the interview memoranda, was shared with the government.  *Id.* at 490-91.

As part of its prosecution, the government used the report and interview memoranda to organize its initial investigation.  *Id.* at 499.  One of the defendants argued that the report likely outlined the roles that various officers and employees played at the company and thereby probably contained information concerning the process for having made the relevant financial and accounting decisions.  This would have affected his defenses of lack of criminal knowledge and intent.  *Id.* at 498-99.

The court found that the company's claim that it was a victim and had a "common interest" with the government to be significant.  It concluded that the claim "point[ed] persuasively toward a finding" that both the report and underlying

14

interview materials would provide the defendants with exculpatory information that would either be admissible or likely to lead to admissible evidence. The government's concession that it was obligated to produce certain interview memoranda supported the court's conclusion, as did the government's statement that the report provided a useful roadmap. The court consequently compelled the production of the report and interview memoranda to the defendants. *Id.* at 499.

The government is also obligated to produce any materials from the SEC's interviews. As discussed above, to the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant. *See, e.g. Kyles v. Whitley*, 514 U.S. 419, 437 (1995); and *Brady*, 373 U.S. 87.

The Third Circuit has imposed an obligation on prosecutors "to produce certain evidence actually or constructively in its possession or accessible to it." *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991). The Third Circuit has defined the term "constructive possession" to mean that although a prosecutor has no actual knowledge, he should nevertheless have known that the material at issue was in existence. *United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993). Consequently, courts consider whether a prosecutor knew or should have known of the material even though they were developed in another case. *Id*. In addition, the availability of information is not measured in terms of whether the information is

easy or difficult to obtain but by whether the information is in the possession of some arm of the state. *Perdomo*, 929 F.2d at 971.

Thus, the scope of the government's discovery obligation rests upon a finding that the subject information and documents are accessible to the prosecution or that the agency whose files are at issue is closely aligned and working with the prosecution. While it is recognized that knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, *e.g. United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998), the prosecution is responsible for information and material known to it or of which it should reasonably know.

Here, the government's response to the Rigases' request for the interview notes of the Buchanan attorneys and bank representatives did not claim that the notes did not contain exculpatory information. Rather, the government refused the Rigases' request on the basis that the information sought is equally available to the defense. This reasoning is wrong for a number of reasons. First, the Buchanan lawyers continue to refuse to meet with defense counsel. With respect to the bank witnesses, the government has never identified who from the banks was even interviewed and, therefore, the Rigases have no way of knowing whom to contact, let alone what information such witnesses might possess.

16

Second, when deposed in the civil case, many of the Buchanan and bank witnesses who testified could not recall significant details regarding the transactions at issue in this case. To the extent their memories can be refreshed by the government interview notes, the Rigases are entitled to them.

Third, based upon documents produced by Buchanan after the criminal trial, it is clear that Buchanan was involved in an estate plan designed to provide up to $1 million per month of liquidity to John Rigas. These payments to John Rigas are among the transactions being questioned by the government in this case. Because the estate plan was not a focus of the civil case, Buchanan lawyers were not deposed regarding this subject and, therefore, the Rigases do not know what information particular Buchanan lawyers have to offer on this issue. To the extent that the government notes clarify this issue, they should be promptly produced to the defense.

Finally, with respect to Brown, given the exculpatory nature of his testimony in the SEC proceedings, any notes of interviews with him in preparation of that testimony must also contain exculpatory information, including information beyond his actual testimony. Given that Brown is a cooperating government witness, this information is not equally available to the defense, as the government claims and, therefore, it should be produced. Brown refuses to talk to defense counsel and took the Fifth Amendment in his civil deposition.

17

This case presents an even clearer case for production of interview notes than the recent order from the Fifth Circuit Court of Appeals in the criminal case against Jeffrey Skilling relating to Enron.  In *United States v. Skilling*, 06-20885 (5th Cir. filed Mar. 3, 2008), Jeffrey Skilling sought, for nearly three years, 420 pages of raw interview notes from the government's interview with Andrew Fastow.   [Supplemental Brief of Defendant-Appellant Jeffrey K. Skilling Regarding Fastow Interview Notes at 1, *United States v. Skilling*, (5th Cir. 2008) (No. 06-20885), ("Skilling"), excerpt attached as Exhibit E.]  Fastow's testimony and credibility were cornerstones of Skilling's conviction.  [Skilling at 2.]

While the prosecution did produce a "composite" summary of the interview materials, the prosecution rejected Skilling's request for the materials.  It was not until the Fifth Circuit order the government to produce the notes that Skilling could gain access to the exculpatory material.  [Skilling at 1.]  The raw interview notes proved to be highly valuable to Skilling's defense, since the raw notes contained a number of exculpatory statements that arguably impeached Fastow's criminal trial testimony.   These statements were not included in the composite summary. [Skilling at 3.]

Here, not only has the government refused to produce the notes but has not even produced a summary memorandum of the information provided by Rothenberger during his two day interview by the government.  For the Buchanan

attorneys and the bank representatives, the Rigases have much less of an idea what testimony they could provide.  And access to the interview notes could provide invaluable impeachment information for Jim Brown.  Furthermore, this is not the typical case where, following a conviction, a defendant argues that he is entitled to a new trial because of a *Brady* violation.  Rather, here, the Rigases are merely attempting to protect their due process rights so that they can mount a thorough defense at the trial of this case.

## IV.    CONCLUSION

For all the foregoing reasons, the Rigases respectfully request that this Court order the government to produce interview notes relating to the Buchanan lawyers, bank representatives and James Brown.

Respectfully submitted,
DILWORTH PAXSON LLP

/s/Joseph U. Metz
Joseph U. Metz, Esquire
Atty. Id. No. 32958
112 Market Street, 8th Floor
Harrisburg, PA 17101
(717) 236-4812
jmetz@dilworthlaw.com

Lawrence G. McMichael, Esquire
Atty. Id. No. 28550
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
(215) 575-7000
lmcmichael@dilworthlaw.com

DATED: April 15, 2008